IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

LENORE E. O'BRIEN,

Plaintiff,

v.                                                    OPINION & ORDER

UNITY HEALTH PLANS INSURANCE                          15-cv-429-jdp
CORPORATION,

Defendant.

Plaintiff Lenore E. O'Brien contends that her former employer, defendant Unity Health Plans Insurance Corporation, failed to pay her a base salary equal to that of her male colleague, Ryan Pelz, who held the same account executive job at Unity. O'Brien brings suit under the Equal Pay Act, which prohibits sex-based discrimination in compensation.

Unity moves for summary judgment, contending that three reasons other than sex account for the difference in salary between O'Brien and Pelz: (1) O'Brien had less experience in selling group health insurance than Pelz; (2) Unity stopped awarding merit-based salary increases in 2012, so neither O'Brien nor Pelz received any increase in base salary since 2012; and (3) Pelz was a more consistent performer than O'Brien. The first and third defenses present disputed issues of fact, and the second defense fails as a matter of law to account for the pay difference. The court will therefore deny Unity's motion for summary judgment.

UNDISPUTED FACTS

Except where noted, the following facts are undisputed.

O'Brien worked as a Large Group Account Executive at Unity from May 2009 to October 2014. She joined the company around the same time as her male colleague Pelz, who also joined as a Large Group Account Executive. O'Brien's starting salary was $67,500; Pelz's was $75,000. O'Brien had tried to negotiate her salary, but she was told that she would need to "outsell" Pelz to earn a higher salary. Dkt. 25, ¶ 21. During her employment at Unity, O'Brien and Pelz were the only Large Group Account Executives, and her base salary never equaled Pelz's. Both O'Brien and Pelz also received commissions, which are not at issue in this case.

The account executive job at Unity was a sales position. According to the job description produced by Unity, the qualifications, experience, and skills needed for the job were as follows:

- Bachelor's degree preferred and 2-3 years sales/service experience preferably in the health insurance industry;

- Prior experience in underwriting and understanding risk desirable;

- Knowledge of business operations;

- Effective communication and written skills, which include presentation and interpersonal skills;

- Understanding of health care industry; and

- Strong knowledge of PCs and related applications.

Dkt. 14-1, at 3.

The parties dispute the qualifications that O'Brien and Pelz had when they joined Unity. O'Brien had slightly longer experience in the health care industry sales: she had

worked at Janssen-Ortho-McNeil for about four years, at Cephalon for about one year, and at MetLife for about two years. Dkt. 14-3, at 3. Unity contends that Pelz, who had slightly shorter experience, nevertheless had more focused experience in selling group health insurance. Dkt. 25, ¶¶ 9, 10. Pelz had worked at MercyCare Health Plans for about six and a half years. Dkt. 14-2, at 4. Both O'Brien and Pelz had bachelor's degrees, and the parties do not point to any other aspect of their backgrounds as being pertinent to this case. The parties adduce O'Brien's and Pelz's resumes, declarations of employees at Unity, and deposition testimony of O'Brien to support their positions on the two employees' prior experiences.

The parties also dispute how O'Brien and Pelz performed at Unity. O'Brien adduces her own performance reviews and those of Pelz. According to O'Brien, her performance reviews show that in 2011 and 2012, she had the same performance ratings as Pelz, and for 2013, she had a better rating. Unity contends that Pelz performed better than O'Brien because Pelz was more consistent, in the sense that his sales tended to be distributed more uniformly throughout the year. O'Brien's sales were from larger groups which resulted in greater month-to-month variation.

Unity had offered merit increases in base salary, but it discontinued these in 2012. Neither O'Brien nor Pelz received a salary increase after 2012, so Pelz's base salary remained higher than O'Brien's until she resigned in October 2014.

ANALYSIS

To succeed on a claim under the Equal Pay Act, a plaintiff must establish a prima facie case consisting of three elements: (1) the employer paid different wages to employees of the opposite sex; (2) the employees performed equal work that required equal skill, effort,

and responsibility; and (3) the employees had similar working conditions. 29 U.S.C. § 206(d)(1); *Fallon v. Ill.*, 882 F.2d 1206, 1208 (7th Cir. 1989). Unlike Title VII, the Equal Pay Act does not require the plaintiff to prove any discriminatory intent. *Lang v. Kohl's Food Stores, Inc.*, 217 F.3d 919, 922 (7th Cir. 2000). If the plaintiff establishes a prima facie case, the burden shifts to the employer to establish an affirmative defense. *Fallon*, 882 F.2d at 1211.

An employer establishes an affirmative defense under the Equal Pay Act by showing that the pay difference between employees of opposite sex was due to one of four reasons: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) "any other factor other than sex." *Id.* An employer relying on the fourth category, "any other factor other than sex," bears the burdens of both production and persuasion. *King v. Acosta Sales* & *Mktg., Inc.*, 678 F.3d 470, 474 (7th Cir. 2012). That is, asserting a potential explanation for the difference in pay is not enough; instead, the employer must prove that its stated reason actually accounts for the difference in pay. *Id.*

Unity does not dispute that O'Brien can establish her prima facie case. But Unity contends that there are no genuinely disputed issues of material fact as to Unity's affirmative defenses, and that it is therefore entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Unity offers three reasons under the fourth category to account for the pay difference between O'Brien and Pelz: (1) O'Brien had less experience in selling group health insurance; (2) Unity stopped awarding merit-based salary increases in 2012; and (3) Pelz was a more consistent performer in the sense that his sales were spread out over the year. In considering Unity's motion for summary judgment,

4

the court will draw all reasonable inferences in O'Brien's favor as she is the non-moving party.

## A.  Experience

Unity contends that O'Brien's pay was lower than Pelz's because O'Brien had less experience in selling group health insurance than Pelz did. O'Brien contends that she had as much relevant experience, that the alleged difference in experience was not the actual reason for the pay difference, and that any difference in experience would not account for the pay difference that lasted for the entire duration of her employment at Unity. The court concludes that the alleged difference in experience fails to establish Unity's affirmative defense.

Based on their resumes and applications, Dkt. 14-2 and Dkt. 14-3, O'Brien had a wider range of sales experience in the health care industry. She began selling pharmaceuticals in April 2002, and in March 2007, she began working as a "group benefits consultant" selling life, dental, and disability insurance for MetLife. Pelz appears to have more focused experience in selling group health insurance, which he sold for MercyCare Health Plans beginning in September 2002.

But whether their experience in selling group health insurance was the *actual* reason for the pay difference is disputed. Unity points to its job description of a Large Group Account Executive and contends that the job description proves that "Unity placed a premium on experience in the 'health insurance industry.'" Dkt. 12, at 6-7 and Dkt. 14-1. But that job description is dated January 2014, so it does not actually show what Unity considered to be important in May 2009, when Unity hired O'Brien and Pelz. And even if the job description were the same, the section titled "Job Qualifications / Experience / Skills"

5

indicates that Unity wanted "2-3 years sales/service experience *preferably* in the health insurance industry." Dkt. 14-1, at 3 (emphasis added). The job description document, read as a whole, does not decisively establish that focused experience in selling group health insurance was the primary qualification that Unity sought. Overall, O'Brien matches the job description document about as well as Pelz, which means that Unity has not shown that it is beyond genuine dispute that Pelz had the better qualifications when they were hired.

And even if O'Brien's experience were the actual reason for her lower starting salary, that would not explain the pay difference that endured throughout O'Brien's employment at Unity. Over time, the salaries of two equally performing employees should tend to converge despite differences in their starting salaries. *See King*, 678 F.3d at 474. O'Brien contends that her performance was at least equal if not better than Pelz's. And that appears to be the case for 2011 to 2013. The performance reviews show that O'Brien and Pelz had the same overall performance ratings for 2011 and 2012: "Consistently Exceeded Expectations." For 2013, O'Brien had a higher overall rating. Unity's stated reason that O'Brien started with less experience in selling group health insurance does not explain the enduring pay difference, especially for years in which O'Brien performed just as well or better than Pelz.

Unity's first affirmative defense presents genuine issues of material fact.

## B. Unity's decision to stop offering merit-based pay increases

For a time O'Brien and Pelz received annual merit increases in base salary, but Unity ceased the merit increases in 2012. As a result, neither O'Brien nor Pelz received any increase in base salary after 2012. According to Unity, this "practice" of not increasing the employees' salaries based on merit is another sex-neutral reason that accounts for the pay difference, because it applied equally to O'Brien and Pelz. Dkt. 12, at 7 and Dkt. 23, at 6. This is a

novel twist on the usual merit-system defense, but it lacks merit. The existence of a merit system can be an affirmative defense to a claim under the Equal Pay Act, but the absence of a merit system does not justify an enduring pay difference. Unsurprisingly, Unity cites no authority to support this argument.

Unity contends in its reply brief that O'Brien's "arguments prove nothing about sex being the basis for the decision . . . Simply put, Unity's decision to discontinue awarding salary increases for the Large Group Account Executives . . . cannot create a reasonable inference for the jury to determine O'Brien's salary differential was sex-based." Dkt. 23, at 7. This might be a valid argument against a Title VII claim, but it is not an affirmative defense under the Equal Pay Act. Under the Equal Pay Act, the proponent of an affirmative defense—Unity, not O'Brien—bears the burdens of production and persuasion. *King*, 678 F.3d at 474; *Randall v. Rolls–Royce Corp.*, 637 F.3d 818, 822 (7th Cir. 2011); *Lang*, 217 F.3d at 922; *Stopka v. Alliance of Am. Insurers*, 141 F.3d 681, 685 (7th Cir. 1998). O'Brien need not prove that Unity had any discriminatory intent in discontinuing the merit increases.

Unity's decision to discontinue the merit increases simply locked in past pay discrepancies; it is not a sex-neutral explanation for them. Unity's second stated reason fails as a matter of law to account for the pay difference between O'Brien and Pelz.

## C.  Performance

Unity contends that it continued to pay O'Brien less because Unity "believed Pelz to be the more consistent performer." Dkt. 12, at 7. To be clear, Unity does not contend here that O'Brien's annual performance was deficient. Unity contends instead that O'Brien's performance was more cyclical than Pelz's, whereas Pelz's performance was more consistent throughout the year. The reports of their commissions from 2010 to 2015

show that this is at least partly true. Dkt. 14-4. O'Brien tended to land larger groups, and her sales tended to be concentrated in fewer months, whereas Pelz's sales were more evenly distributed throughout the year. The difference is not overwhelming, and O'Brien and Pelz achieved similar results in terms of total sales over the five years. The trier of fact could conclude that Pelz's marginally more "consistent performance" was not the actual reason for the pay difference between O'Brien and Pelz.

Unity contends that O'Brien "blatantly ignor[ed] Unity's repeated directives" to "sell year-round." Dkt. 23, at 8. But whether Unity gave "repeated directives" to O'Brien is disputed. Unity submits declarations of two current officers at Unity, Collien and Bolz, who state that "it [was] important to Unity that executives have sales activity throughout the year," without stating when, where, or how, they gave the "repeated directives" to O'Brien. Dkt. 14, ¶ 9 and Dkt. 15, ¶ 4. Unity also relies on O'Brien's deposition, in which O'Brien said any sales employer would prefer its sales employees to make sales year-round. Dkt. 17 (O'Brien Dep. 50:11-21). These bits of evidence do not establish that Unity gave "repeated directives" about consistent performance or that O'Brien blatantly ignored them.

To the contrary, the record suggests that consistent performance was not the means by which Unity evaluated the performance or value of O'Brien and Pelz. The performance reviews of O'Brien and Pelz show that O'Brien and Pelz were evaluated based on total sales— i.e., total number of new health insurance contracts—for each year, as opposed to consistency in their performance. *See* Dkt. 21-3, at 2 (setting "1800 new group members" as the goal for 2011), 20 (setting "2250 new members" as the goal for 2012), 38 (setting "2500 new members" as the goal for 2013); Dkt. 21-4, at 2 (setting "1800 new group members" as the goal for 2011), 20 (setting "2250" as the goal for 2012), 36 (setting "2500 new members" as

the goal for 2013). The performance reviews also set out other goals such as targeting specific counties or prospective customers, Dkt. 21-3, at 2, 12, 21, 30, 38, 44, 53, but they do not set goals for consistent performance. Thus, these documents tend to show that the actual means by which O'Brien's performance was measured had nothing to do with consistency in performance throughout the year. The trier of fact could find that Unity's current focus on consistent performance, supported by two current employees' declarations submitted in the middle of litigation, is merely a post hoc justification, not the actual reason for paying O'Brien less than her male colleague.

Unity's third affirmative defense presents genuine issues of material fact.

## D.  New trial date

The court has stricken the trial date and explained that a new trial date will be set in consultation with the parties. Dkt. 32. Court staff will contact counsel to schedule a status conference to set a new trial date, which the court will expect to be within the next six weeks. Before the status conference, counsel should confer on available dates and on the tasks that need to be completed before trial.

ORDER

IT IS ORDERED that:

1. Defendant Unity Health Plans Insurance Corporation's motion for summary judgment, Dkt. 11, is DENIED.

2. Court staff will contact counsel to schedule a status conference to set a new trial date.

Entered November 7, 2016.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge